BOURNE, TOWN OF vs. COFFEY, 101 Mass. App. Ct. 496

 
 TOWN OF BOURNE vs. FRANCIS J. COFFEY, individually and as personal representative. [Note 1]

101 Mass. App. Ct. 496
 May 11, 2022 - August 12, 2022

Court Below: Land Court
Present: Green, C.J., Kinder, & Neyman, JJ.

 

No. 21-P-501.

Land Court, Recorder. Real Property, Foreclosure of tax title. Taxation, Real estate tax: tax taking, Real estate tax: foreclosure of right of redemption.

The Land Court recorder did not abuse her discretion in denying the defendant's petition to vacate a final judgment of foreclosure that had been entered in a tax taking action filed by the plaintiff town, or in denying the defendant's motion for reconsideration, where there was an insufficient showing of any extenuating circumstances that prevented the taxpayer (the defendant's decedent) from participating in the foreclosure proceeding. [498-502]

Civil action commenced in the Land Court Department on November 17, 2016. 

 A petition to vacate foreclosure decree, filed on February 6, 2020, was heard by the recorder, and a motion for reconsideration, filed on March 16, 2021, was considered by her. 

 Nicholas P. Shapiro for the defendant.

 David J. Coppola for the plaintiff.

 NEYMAN, J. Francis J. Coffey filed a petition in the Land Court, individually and on behalf of the estates of Leona M. Warsowick and Robert F. Regan, seeking to vacate a foreclosure decree under G. L. c. 60, §§ 69-69A. The Land Court recorder (recorder) [Note 2] denied the petition and subsequent motion for reconsideration. Coffey now appeals therefrom, claiming error and abuse of discretion. 

 Page 497 

We affirm.

 Background. We recite the relevant facts as found by the recorder, supplemented by uncontroverted evidence that is not contrary to the recorder's findings and rulings. Warsowick owned a residential property in Bourne (property). Warsowick died in 1997 and was survived by her son, Regan, who began living at the property. Warsowick's will named Regan as her executor and sole designee, but Regan did not file any probate of her estate. For the next fourteen years, Regan lived at the property and the property taxes were paid to the town of Bourne (town) without incident. 

 In 2015, Regan failed to pay taxes on the property in full. In February 2016, through an instrument of taking, the property was taken by the town for nonpayment of taxes. [Note 3] In November 2016, the town commenced an action in the Land Court to foreclose the right of redemption on the property. Warsowick's unadjudicated estate was still the title holder of the property. Nonetheless, Regan was served with the complaint, by certified mail, due to his status as a putative heir of Warsowick. [Note 4] Neither Regan nor any other defendant appeared or answered in the foreclosure action, and a final judgment of foreclosure entered on June 28, 2018. [Note 5] Regan died in December 2018.

 On June 28, 2019, exactly one year after the entry of judgment of foreclosure, Coffey -- Regan's cousin -- filed a petition to vacate the judgment on behalf of himself (as a party in interest) and the estates of Warsowick and Regan. [Note 6] In December 2019, the 

 Page 498 

town requested from Coffey verification that he was a legal heir of Regan and was entitled to redeem the tax taking on behalf of Warsowick's and Regan's estates. The town allowed Coffey an opportunity to redeem if, within ninety days, he provided the requested verification and tendered "in-full" the delinquent taxes, interest, costs, and fees. After Coffey failed to provide verification or tender the delinquent payment, a hearing on the petition to vacate was held on March 5, 2020, following which the recorder denied Coffey's petition. Coffey filed a motion for reconsideration. [Note 7] In a comprehensive order, the recorder denied the motion for reconsideration and further delineated a "summary of the reasoning on which [she] relied in denying the [petition to vacate]." Coffey appeals from the denial of the petition to vacate and motion for reconsideration. [Note 8]

 Discussion. "[W]e review the denial of [a] petition [to vacate a foreclosure decree] for abuse of discretion and error of law" (citation omitted). Ithaca Fin., LLC v. Leger, 99 Mass. App. Ct. 368, 372 (2021). Coffey first argues that where, as here, a petition to vacate a foreclosure decree is filed within one year of the foreclosure decree, the petition should be allowed upon the movant's showing of excusable neglect. He asserts that the recorder's failure to apply this standard, on reconsideration, "was clear legal error." The argument is unavailing.

 General Laws c. 60 allows municipalities to take tax title to a property following the nonpayment of property taxes as "security for the repayment of [the overdue] taxes." G. L. c. 60, § 54. Execution of an instrument of taking perfects the municipality's tax lien on the property, "effectively transfer[ring] control of the property from the delinquent taxpayer to the city or town." Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 463 (2020). Following a tax title taking, the taxpayer retains a statutory right to redeem -- "an absolute right to regain title to the property upon payment of the full amount [owed], including taxes, fees, costs, and interest." Id. at 467, citing G. L. c. 60, § 62. If the right to redeem is not exercised within six months of the tax title taking, the municipality can begin proceedings to foreclose the right of redemption. G. L. c. 60, § 65. If the taxpayer does not respond or fails to redeem the property, the taxpayer risks judgment 

 Page 499 

foreclosing the right of redemption. [Note 9] G. L. c. 60, § 69.

 After foreclosure of the right of redemption, the taxpayer has a final opportunity to regain title to the property. The taxpayer may file a petition to vacate the foreclosure decree pursuant to G. L. c. 60, § 69. On such a petition, the "decree may be vacated in the discretion of the court." G. L. c. 60, § 69. Section 69A provides a limitations period, requiring that "[n]o petition to vacate a decree of foreclosure entered under section sixty-nine . . . shall be commenced . . . except within one year after the final entry of the decree." G. L. c. 60, § 69A. "After one year, the judgment is final and can be vacated only upon a showing of a denial of due process." Tallage Lincoln, LLC, 485 Mass. at 453. See Ithaca Fin., LLC v. Lopez, 95 Mass. App. Ct. 241, 243 (2019) ("Absent a showing of a due process violation, strict adherence to this one-year period is mandatory" [citation omitted]).

 Coffey asserts that "[n]o binding authority to date has" articulated the showing necessary on a petition brought within one year of the foreclosure decree. He contends that "[i]n light of the remedial nature of the statutory scheme, the most apt analogy . . . is the [excusable] neglect standard found in Mass. R. Civ. P. 60 (b) (1)[, 365 Mass. 828 (1974)]." Contrary to this assertion, there is authority on point. In Vincent Realty Corp. v. Boston, 375 Mass. 775, 778 (1978), the Supreme Judicial Court considered a petition to vacate brought within one year of the foreclosure decree. The court recognized that "[G. L. c. 60, §] 69A does not give one the automatic right to redeem, but sets the time period within which petitions to vacate should be brought." Vincent Realty Corp., supra at 780 n.6. Vincent Realty instructs that, even when filed within the one-year limitations period, "a petition to vacate a prior decree foreclosing the right of redemption under a tax title is 'extraordinary in nature and ought to be granted only after careful consideration and in instances where they are required to accomplish justice'" (citation omitted). Id. The court went on to conclude that no such "extenuating circumstances" 

 Page 500 

existed to warrant allowance of the petition to vacate. [Note 10] Id. at 779-780. Here, where the recorder cited to the standard set forth in Vincent Realty Corp., we discern no error of law. [Note 11]

 Coffey next argues that denial of his petition to vacate was an abuse of discretion where Regan suffered from serious illness at the time of the taking and foreclosure of the right of redemption. He avers that Regan was diagnosed with chronic obstructive pulmonary disease in 2011 and, in 2015, became unable to pay the taxes on the home "because of his declining health and corresponding financial pressures." Coffey contends, therefore, that "[p]lainly [excusable] neglect was shown here," such that the recorder's denial of the petition to vacate was an abuse of discretion. 

 The recorder found, as articulated in the denial of the motion for reconsideration, that Coffey "had himself become aware of the foreclosure process in approximately May of 2018, but that Regan would not allow him to contact the Town or otherwise become involved." Despite this awareness, and receipt of a summary of the amount owed, see note 5, supra, Regan "did not pay the taxes or appear in this action, and judgment subsequently entered."

 Consequently, the recorder denied the petition "because there had not been a sufficient showing that Regan had been prevented from participating in the foreclosure action by mental illness, incapacity, or any other convincing reason." The recorder explained:

"What instead appears more clearly from Attorney Coffey's assertions is that Regan's health issues were related to his having fallen behind on tax payments, as medical expenses would have limited his available funds. However, this point 

 Page 501 

is unrelated to his participation (or lack thereof) in this case and the tax foreclosure process, and his illness does not explain that failure. . . . Here, colloquy with Attorney Coffey at the hearing -- consistent with his submissions in advance of the hearing -- suggested that Regan was not prevented from participating, but instead declined to do so. In fact, Attorney Coffey's explanation at the hearing for why he had been 'hamstrung' from helping Regan defend against the foreclosure action was that Regan retained control of his faculties and the ability to make decisions about the property. The court was not, and is not, convinced that the high bar set for showing entitlement to the extraordinary relief of vacating a judgment has been met here."

Based on the recorder's findings, which the record supports, we cannot say that the recorder abused her discretion in denying the petition to vacate. [Note 12] See Nissan Autos. of Marlborough, Inc. v. Glick, 62 Mass. App. Ct. 302, 307 (2004) ("We will not set aside findings of fact unless they are clearly erroneous").

 Coffey now insists that Regan's "incapacitating" illness caused financial hardship that impacted his abilities to pay the redemption amount and to participate in these proceedings. However, the recorder's findings, along with Coffey's representations to the recorder [Note 13] at the hearing on the petition to vacate, contradict the contention that any alleged hardship prevented Regan from participating in this proceeding or the tax foreclosure process. Instead, those findings and representations confirm that Regan could have participated in the proceedings, but affirmatively chose not to do so. [Note 14] Accordingly, "no extenuating circumstances existed here to warrant a reopening of the case under G. L. c. 60, § 

 Page 502 

69A." Vincent Realty Corp., 375 Mass. at 779-780.

 Coffey decries the harshness of the resulting loss of equity, see note 9, supra, but does not challenge the constitutionality of the statutory scheme. We acknowledge the potential harshness of the statute as applied in certain circumstances. We are not the first court to do so. As noted by the Supreme Judicial Court in Tallage Lincoln, LLC, 485 Mass. at 453 n.4:

"In Kelly v. Boston, 348 Mass. 385, 388 (1965), this court considered the legislative history of the statutory scheme governing tax lien foreclosures and determined that the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality. The parties in that case did not raise any constitutional challenge, and [the court] did not address the constitutionality of the statutory scheme. Here, too, the parties have not raised a constitutional challenge, and we do not address the constitutionality of the statutory scheme."

 Conclusion. The orders denying Coffey's petition to vacate the foreclosure decree and the motion for reconsideration are affirmed.

So ordered.

FOOTNOTES
[Note 1] Of the estates of Robert F. Regan and Leona M. Warsowick. Upon order of this court, Coffey filed a "corrected motion to substitute parties" pursuant to Mass. R. A. P. 30 (a), as appearing in 481 Mass. 1661 (2019), and G. L. c. 60, § 69A, through which he sought to substitute himself "for and in place of the deceased Defendants-Appellants, Leona M. Warsowick and Robert Regan," as "Personal Representative[] for the Estates of Leona M. Warsowick and Robert F. Regan." This court allowed that motion. 

[Note 2] The recorder hears and rules on petitions for tax foreclosure and redemption from tax title under G. L. c. 60. See G. L. c. 185, § 6; Land Court Standing Order 1-04(A)(4) (2004). 

[Note 3] The instrument of taking listed the unpaid 2015 tax liability as $899.28, plus interest, fees, expenses, and costs resulting in a total sum of $1,167.44 "for which [the] land [was] taken." 

[Note 4] Because title lay with Warsowick's unadjudicated estate, notice of the action was also published in a local newspaper. 

[Note 5] In June 2018, relatives of Regan contacted the town and obtained a summary of the amount owed but took no further action before the foreclosure judgment entered on June 28, 2018. On or about July 23, 2018, Regan attempted to pay $800 towards the delinquent tax bill, which at that time totaled over $15,000. The town did not accept the partial payment because the foreclosure judgment had already entered. 

[Note 6] The recorder noted that, because neither estate had been probated, Coffey could not act on behalf of the estates but the court "entertained his motion due to his status as familial relative of, and therefore putative (though unadjudicated) heir to Regan." Subsequently, both estates were adjudicated, and Coffey was appointed as personal representative. Following oral argument on appeal, Coffey filed, and this court allowed, a motion substituting himself for the deceased parties as personal representative of their estates. See note 1, supra. 

[Note 7] Coffey also sought leave to file a late notice of appeal, which a single justice of this court allowed. 

[Note 8] A single justice of this court consolidated the appeal from the order denying reconsideration with the underlying appeal. 

[Note 9] Judgment under G. L. c. 60, § 69, transfers absolute title to the property, a "strict foreclosure." Tallage Lincoln, LLC, 485 Mass. at 452. "[T]his process is different in several important ways from a foreclosure by power of sale, which is how mortgage foreclosures generally proceed." Id. "[A]fter a strict foreclosure, the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity." Id. at 453. The instant case illustrates this point. At the time the tax taking was executed, the total sum owed to the town was $1,167.44, while the property was valued at $258,000. 

[Note 10] Contrary to Coffey's contention that such a standard treats timely petitions no differently than those filed outside the limitations period, there is a clear demarcation between the two. A petition brought within one year requires a showing of some extenuating circumstance, while a petition brought after the one-year limitations period can prevail only upon a showing of a due process violation. See Tallage Lincoln, LLC, 485 Mass. at 453; North Reading v. Welch, 46 Mass. App. Ct. 818, 819-820 (1999). 

[Note 11] Even assuming, arguendo, that conduct constituting excusable neglect may be sufficient to warrant the allowance of a timely petition to vacate under G. L. c. 60, § 69A, the factual circumstances as found by the recorder in the instant case were such that the denial of the petition to vacate was within the recorder's discretion. See infra. Cf. Hermanson v. Szafarowicz, 457 Mass. 39, 46-47 & n.11 (2010). 

[Note 12] To the extent that Coffey claims error in the recorder's failure to issue findings, the recorder's written decision on reconsideration rendered the issue moot. See Commonwealth v. Williams, 60 Mass. App. Ct. 331, 331 n.1 (2004). 

[Note 13] At the hearing on the petition to vacate the foreclosure judgment, Coffey represented, in part, that Regan "had control of his faculties and his ability to make decisions about the property, his mother's property, and I was hamstrung . . . up until the moment of his death." 

[Note 14] Inability to pay the redemption amount may ultimately lead to foreclosure of the right of redemption, but it does not prevent a party from participating in the proceeding. For example, even if Regan could not afford to pay the redemption amount, he could have made an offer to redeem and sought an order granting him additional time to make the redemption payment. See G. L. c. 60, § 68 (court may "make a finding allowing the party to redeem, within a time fixed by the court"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.